| | | |
|---|---|---|
| RHIANNON NICOLE TAGERT, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANAKEESTA, LLC, | ) | Civil Action No. 3:22-cv-00316 |
| | ) | JURY DEMANDED |
| and | ) | |
| | ) | |
| SAFE-STRAP COMPANY, LLC | ) | |
|     Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, Rhiannon Nicole Tagert, by and through counsel, and submits this memorandum in firm opposition to Defendant Safe-Strap, LLC's ("Safe-Strap" or "Defendant") motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### INTRODUCTION

This case revolves around the Plaintiff, Rhiannon Nicole Tagert ("Ms. Tagert"), who was ejected from the Anakeesta Mountain Roller Coaster. During her visit to Gatlinburg, Tennessee, Ms. Tagert purchased a ticket for the mountain coaster. Unfortunately, her ride turned terrifying when the seatbelt, supplied by Safe-Strap, failed. As Ms. Tagert descended the coaster, in car number eight, the seatbelt failed, leading to her being hurled from the coaster, causing her to be injured.

The Safe-Strap seatbelt proved unsafe. The incident occurred five days after the roller coaster commenced operations on October 1, 2018. (Affidavit of Robert Bentz Paragraph 8; Amended Complaint Paragraph 12). Ms. Tagert, relying on the seatbelt, fastened the seatbelt herself, as she recounted, "I put the two pieces together, and it closed." (Depo. of Rhiannon Tagert

78:13). Ms. Tagert testified at her deposition that she expected "that [the seatbelt] would keep me in the cart." (Depo. of Rhiannon Tagert 78:7). Further, the coaster attendant confirmed the seatbelt's locking, to which Ms. Tagert responded with a thumbs-up, signifying the seatbelt was checked and securely latched. (Depo. of Rhiannon Tagert 78:14-25).

Despite these measures, the Plaintiff was ejected from the roller coaster, calling into question the safety and reliability of the Safe-Strap seatbelt. Safe-Strap, however, contends that Plaintiff is unable to prove the seatbelt was defective or unreasonably dangerous at the time it left their control and seeks summary judgment. (ECF 58). Contrarily, the Plaintiff's case robustly challenges Safe-Strap's assertion and advocates for the matter to proceed to trial.

Defendant's motion hinges largely on a plain, clerical error in the report of Plaintiff's expert, Michael Lo Presti PE, CSDP, MBA ("Mr. Lo Presti"), regarding the identification of Plaintiff. This clerical misstep, limited to a particular segment of the report and involved a single image, incorrectly depicted Plaintiff in car number six, dressed in light purple. The Plaintiff was actually in car number eight and dressed in a darker purple. This issue and other related arguments from Safe-Strap are addressed in more depth in the Plaintiff's Memorandum of Law Opposing Safe-Strap's Motion to Strike Expert Report and Exclude Testimony of Michael Lo Presti, PE, CSDP, MBA. Despite being aware of this clerical misidentification, the Defendant chose to continue with Mr. Lo Presti's deposition after the Court's deadline for expert rebuttals. Notably, during his deposition, Mr. Lo Presti not only acknowledged this error but also corrected it. Consequently, in compliance with the Court's Scheduling Order and as Federal Rule of Civil Procedure 26(e) allows, Mr. Lo Presti intends to provide a supplemental amendment to his report.

While Safe-Strap disputes the facts underpinning Mr. Lo Presti's opinion, these disputes are far more apt for cross-examination than standalone grounds for excluding his testimony and expert opinion. Notably, Safe-Strap cannot deny that Mr. Lo Presti's testimony and opinion

testimony satisfy all of the requirements for expert testimony set forth in Federal Rule of Evidence 702. Their argument appears to primarily pertain to the weight of Mr. Lo Presti's testimony and report rather than its admissibility.

Mr. Lo Presti's credentials as a professional engineer since 1995, with extensive experience in forensic engineering since 1999, underscore his expertise in construction, mechanical and electrical engineering, product design, and general engineering. His previous testimonies in various cases further highlight his substantial expertise, such as his work with renowned organizations like IBM Corporation, Lockheed Martin, Raytheon Company, and the U.S. Supreme Court, and his recognition as a Six Sigma expert and specialist.

In light of Mr. Lo Presti's background and experience, his insights are critical and relevant to the disputed issues in this case. His comprehensive review included a thorough examination of case documents, photographs, technical reports, field inspections, video evidence, and personal observations garnered during his site visit, which included capturing his own photographic evidence. Mr. Lo Presti's detailed analysis addresses the aspects of safe operation, maintenance, and supervision of the Anakeesta Rail Runner Mountain Coaster, including an in-depth evaluation of the seatbelt system. This expertise is essential for a complete understanding of the system.

## PROCEDURAL HISTORY

In the current litigation, Mr. Lo Presti conducted an on-site inspection of the Anakeesta Rail Runner Mountain Coaster on June 1, 2023. Plaintiff, adhering to this Court's Scheduling Order, duly served its expert disclosures, and the compliance remains uncontested by Defendant. The deadline for submission of Plaintiff's expert reports was set for August 14, 2023. Demonstrating diligence, the Plaintiff submitted Mr. Lo Presti's expert report ahead of schedule on August 10, 2023. Defendant had their expert reports due by September 12, 2023, and on this date, Defendant served the expert report of David Riegner ("Mr. Riegner"). Mr. Riegner's report mentioned a clerical error in Mr. Lo Presti's report. Defendant mistakenly suggests that Mr. Lo

3

Presti had fourteen days to amend this report until the September 26, 2023 rebuttal deadline. However, Defendant confuses rebuttal and supplementation, which under Rule 26(e) allows for the correction of inaccuracies and the completion of an incomplete expert report.

Notwithstanding this clerical mistake, the Defendant chose to go ahead with the deposition of Mr. Lo Presti on October 5, 2023. During this deposition, Mr. Lo Presti not only acknowledged the clerical error but also essentially revised the report through his deposition testimony, addressing the oversight comprehensively.

Lastly, the trial is scheduled more than four months away on April 9, 2024.

## STANDARD OF REVIEW

While the Defendant's interpretation of the standard for summary judgment is largely accurate, it is crucial to emphasize the narrow question before this Court in a motion for summary judgment: Is there a genuine dispute concerning any material fact, and is the moving party justified in receiving judgment as a matter of law? Fed. R. Civ. P. 56(a). The burden is on the movant to show the absence of a genuine issue of material facts as an essential element of the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). Summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986)

4

# ANALYSIS

The apparent aim of Safe-Strap's contention is aimed at discrediting the expert opinion of Mr. Lo Presti, a move that appears more tactical than substantive. This approach seeks to undermine Mr. Lo Presti's finding by isolating excerpts from his deposition, interpreting them out of context, and then using such interpretations to argue for the inadmissibility of his testimony. However, a closer inspection reveals that the arguments fail to show that there is no genuine dispute concerning any material fact.

## I. Compliance with Tennessee Products Liability Statute

Plaintiff's claims are well-founded under Tennessee Code Annotated 29-28-10, et seq. The allegations that the seatbelt system on the roller coaster was defective and/or unreasonably dangerous at the time of sale and installation are backed by substantial evidence. Five days after the roller coaster began operations, Plaintiff was ejected from the roller coaster. (Affidavit of Robert Bentz Paragraph 8; Amended Complaint Paragraph 12). The evidence supporting that the seatbelt system on the roller coaster was defective and unreasonably dangerous includes, among other things, the incident video, Mr. Lo Presti's expert report, and his deposition testimony,

### A. Plaintiff's Establishment of the Seatbelt's Defective and Unreasonably Dangerous Condition

The Defendant correctly identifies the standards outlined in *Fulton*. However, this approach was reconsidered in *Burton v. Warren Farmers Corp.*, which observed the restrictive nature of the *Fulton* test, likening it to proving a civil case beyond a reasonable doubt. *Kelley v. Apria Healthcare, LLC*, 232 F. Supp. 3d 983, 999 (E.D. Tenn. 2017) (citing *Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 523 n.4 (Tenn. Ct. App. 2002). *Burton* significantly reinterprets the application of the *res ipsa loquitor* doctrine, suggesting that "exclusive control" is not an indispensable element. *Id.* (quoting *Burton*, 129 S.W.3d 513 at 525 (Tenn. Ct. App. 2002).

5

The Sixth Circuit recognized and applied this interpretation in *Morris v. Wal-Mart Stores, Inc.*, which preferred this less restrictive approach over the one proposed in *Fulton*. *Morris v. Wal-Mart Stores, Inc.*, 330 F.3d 854, 857-62 (6th Cir. 2003); see also *Callahan v. Boozer*, No. 3:04-cv-27, 2005 WL 1712133, at *4 (E.D. Tenn. July 21, 2005) (Shirley, Mag.) (citing *Morris* and *Burton* and taking less restrictive approach).

Further, *Bradley v. Ameristep, Inc*. shed additional light on the matter and questioned the accuracy of this requirement under Tennessee Law. *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209-210 (6th Cir. 2015). Neither *Fulton* nor *Browder* explicitly necessitates that specific errors in construction or design be identified by expert testimony. In particular, *Browder* implied that expert testimony is not the sole means to establish a product liability claim; circumstantial evidence and proof of property use, handling, or operation of the product, along with the nature of the malfunction, may suffice. *Browder v. Pettigrew*, 541 S.W.2d 402, 404 (Tenn. 1976).

In the present case, the critical consideration is whether Safe-Strap had a duty to the Plaintiff to anticipate or guard against the risk of the Plaintiff being ejected from the roller coaster. This approach aligns with the broader understanding of liability under Tennessee law. It focuses on the responsibilities of the defendant in ensuring the safety of its products against Plaintiff being ejected from the roller coaster.

Defendant's challenge to the reliability of Mr. Lo Presti overlooks the comprehensive nature of his investigation. Mr. Lo Presti's expert opinions were developed as a result of

> extensive review of case documentation, photographs, technical reports, field inspection, video recordings, and personal on-site observation visit, including self-obtained pictures during a site visit on Thursday, 1 June 2023[.]

(p. 1 of Lo Presti's Report). Mr. Lo Presti's site visit focused on several things, including "the defective product of the restraint system." (Depo of Lo Presti 16: 5-9). He evaluated the component parts of the seatbelt system. (Depo of Lo Presti 31: 20-22). Mr. Lo Presti's evaluation of the system

led to the conclusion that the seatbelts "did not comply with the requirements," "did not adequately protect the safety of the occupants," "there are other system level issues not specific to the buckle, but the whole system," and "that the restraint system failed." (Depo of Lo Presti 33: 7-10, 34: 10-11, 20-24). Crucially, Mr. Lo Presti's assessment of the loads borne by the restraint system based on ASTM standards indicated that these loads likely exceeded what the restraint system was designed to handle. (Depo of Lo Presti 36: 2-9, 37: 1-4).

Mr. Lo Presti's emphatic statement during his deposition highlights the gravity of the situation. He opined, "[W]hat we do know is a person was ejected from the ride" (Depo of Lo Presti 34: 24), and expressed his personal reluctance to use the roller coaster with the current seatbelts, stating, "I would not ride that coaster and the current system with the current restraints. And it's coaster, I wouldn't let my family rider either… it's extremely dangerous." (Depo of Lo Presti 37: 21-23). These statements emphasized the perceived danger and inadequacy of the restraint system, further substantiating the claim of the seatbelt's defective and unreasonably dangerous condition.

### i. Mr. Lo Presti's Well-Founded Theories on the Defectiveness of Safe Strap's Seatbelts

The Defendant's reliance on two letters of approval from Brandauer regarding certification and safety of the seatbelts warrants scrutiny. These letters constitute classic hearsay evidence and fail to meet the criteria for the regularly conducted business activity exception. This is primarily because the affidavit of Robert Bentz, which references these letters, does not adequately establish their reliability. Moreover, the letters are vague, lacking specific details such as the identification of the seatbelts manufacturer or the model, referring to them only as "locking seatbelts." This lack of specificity casts doubts on their credibility and relevance to the case at hand.

Mr. Lo Presti commented on this anomaly during his deposition, noting, "Normally, it's called a Letter of Acceptance. When you replace something, it's accepting the replacement to be

used." (Depo of Lo Presti 81:25, 82, 1-3). Further opining, a letter of acceptance indicates that "they had received an exemplar or test specimen, had validated it consistent for the proper use, and then accept that for use as an approved alternative. (Depo of Lo Presti 82:24-25, 83: 1-4).

Robert Bentz's affidavit does not confirm personal knowledge of the testing or results. His statements only indicate that seatbelts were installed prior to an inspection by a third-party, without any mention of testing. Further, those third-party inspection reports do not indicate that any tests were done on the seatbelts. In fact, the third-party inspection reports only mention seatbelts once, and that was in the context of "25 needs new body installed (This will be used as a seatbelt test car only)." (2018 Inspection Report).

Safe Strap's own admission is telling. Saft-Strap confirmed that they "did not perform any tests upon the prototype seatbelts or the manufacturer approached seatbelts sent to Anakeesta, LLC in September 2018 for installation on the Rail Runner Coaster." (Pl.'s 1st Set Interrogs. No. 16) For that matter, Safe-Strap could not confirm the completion of any actual tests on the seatbelts. (Pl.'s 1st Set Interrogs. No. 16). Safe-Strap's response indicated only a possibility that tests "may" have been conducted. (Pl.'s 1st Set Interrogs. No. 16). Safe-Strap disclosed that they never received any results from such tests, nor were their employees present to witness or verify any testing procedures. This gap in documentation and direct oversight raises significant doubts about the thoroughness and reliability of any supposed safety evaluations of the seatbelts.

Mr. Lo Presti's comprehensive site visit to Anakeesta was more than a theoretical exercise. He carried out an in-depth examination of the seatbelt system and its integration with the broader safety protocols of the roller coaster. His approach involved the direct physical inspection and operation context of the roller coaster. This hands-on approach provided Mr. Lo Presti with crucial insights into the practical aspects of the seatbelt system's functionality and safety, further informing his expert opinion. Lastly, Mr. Lo Presti concluded, "The [seat]belt replacement effort was not

managed within the Standard of Care of Engineering, which is the recognized specifying authority on changes related to systems not involving passengers' safety." (Depo of Lo Presti 170: 12-15).

### i.[1] Validating the Defectiveness and Unreasonable Danger of the Seatbelt Design

In their memorandum, Defendant, yet again, erroneously cites Federal Rule of Civil Procedure 702, which is a misreference, as the applicable rule in this context is Federal Rule of Evidence 702. While minor, this technical error indicates a broader misinterpretation of the standards and applicability of expert testimony in this case. Plaintiff sets forth this argument in greater detail in Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike Expert Report and to Exclude Testimony.

Mr. Lo Presti's testimony, grounded in his extensive engineering expertise and detailed analysis of the incident, meets these criteria. His expertise provides critical insights into the seatbelts' potential design and functional flaws, which are central to the case. Specifically, Mr. Lo Presti spent years doing construction on roller coaster rides and doing nondestructive inspections of certain components of amusement rides. (Depo 40: 24-25, 41: 1-9). Mr. Lo Presti opined, "I'm familiar with doing inspection on that type of work and the system [of amusement park rides]." (Depo 40: 24-25, 41: 1-9). The restraint system failed… "[W]hat we do know is a person was ejected from the ride." (Depo of Lo Presti 34: 20-24).

Despite the Defendant's claims, Mr. Lo Presti's conclusions are not speculative but are based on a rigorous analysis of the seatbelt system and the dynamics of the incident. His assessment goes beyond mere conjecture and is rooted in his professional judgment and

---

[1] For the convenience of the Court, the Plaintiff has attempted to mirror the Defendant's Number formats. However, the Defendant mistakenly used subheading (i) twice in their Memorandum of Law. This oversight is highlighted not to criticize but to illustrate that errors can occur even in professional contexts. If Defendant's rationale for seeking exclusion of Plaintiff's experts based on a mistake were consistently applied, it would similarly cast doubt on the validity of their own motion due to Defendant's own mistake. However, Plaintiff contends that such mistakes, whether in an expert report or in the Defendant's motion, should not detract from the substantive merits and legal arguments presented by either case.

experience. The fact that the ride had been operational for only five days before the incident does not invalidate concerns regarding potential defects in design or manufacture that could have existed from the onset.

While Defendant challenges the admissibility of Mr. Lo Presti's testimony based on alleged noncompliance with Federal Rule of Evidence 702, it is crucial to distinguish between the admissibility of expert testimony and the weight it should be given. *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997) ("Technical unreliability goes to the weight accorded a survey, not its admissibility") (citations omitted); *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802,807,809 (3d Cir. 1997) (reversing exclusion of expert based on "insufficient factual foundation" and cautioning that the "trial judge must be careful not to mistake credibility questions for admissibility questions"). Further, this Circuit has held, "[M]ere weaknesses in the factual basis of an expert witness'[s] opinion . . . bear[s] on the weight of the evidence rather than on its admissibility." *McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 801* (6th Cir. 2000). The role of the court is to assess the admissibility of the testimony, whereas the weight and credibility of the evidence are determinations for the jury. *Drips Holdings, L.L.C. v. Teledrip L.L.C.*, No. 5:19-CV-02789-JRA, 2022 U.S. Dist. LEXIS 227356, at *27 (N.D. Ohio Aug. 30, 2022) (quoting *Nationwide*, 2020 U.S. Dist. LEXIS 198998, 2020 WL 6280917, at *4 (2020)).

Defendant's emphasis on Mr. Lo Presti's willingness to revise his report is misplaced. Expert witnesses may supplement their opinions as new information becomes available or as they further analyze the case. Adaptability is a hallmark of diligent expert analysis and does not inherently detract from the overall reliability or relevance of their testimony. This issue is discussed in greater detail in Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike Expert Report and to Exclude Testimony.

10

Plaintiff asserts that Mr. Lo Presti's expert testimony is in compliance with Federal Rule of Evidence 702 and provides essential insights critical to understanding the safety and functionality of the seatbelt system in question. Therefore, Mr. Lo Prest's report and testimony are both admissible and vital to comprehensively evaluate the facts in this case.

### ii. Establishing the Necessity for a More Robust Belt Design and Its Impact on Safety.

Defendant's argument underestimates the significance of Mr. Lo Presti's expert analysis. Mr. Lo Presti, a seasoned forensic engineer, provided a comprehensive assessment based on his extensive experience and established engineering principles, directly addressing the seatbelt's failure and the necessity for a more robust design.

In part, Mr. Lo Presti's site visit and subsequent analysis focused on identifying critical defects in the restrain system. His statement, "[D]uring my site visit in June, my analysis of the incident focused on several things… one [being] the defective product of the restrain system," underscores his thorough examination of the restraint system's inadequacy in the context of this roller coaster. (Depo of Lo Presti 16:5-9).

Mr. Lo Presti evaluated the component parts of the seatbelt system, (Depo of Lo Presti 31:20-22), and concluded that the restraint system did not comply with the requirements and did not adequately protect the safety of the occupants. (Depo of Lo Presti 33: 7-10). This conclusion is further supported by his assertion, "The configuration of this ride and the physics of the ride clearly suggest a more advanced restraint system was necessary. And, in fact, the Safe-Strap restraint system didn't even comply with any of the five classes of restraints present in the ASTM standard." (Depo of Lo Presti 36: 18-22).

The expert's review of standard loads as per ASTM standards led to the conclusion that the loads on the roller coaster were likely higher than what was understood by the restrain system specifier. (Depo of Lo Presti 37: 1-4). Mr. Lo Presti expressed his personal reluctance to use the

roller coaster, stating, "I would not ride the coaster and the current system with the current restraints. And it's a coaster I wouldn't let my family ride either. It has latent defects and it's extremely dangerous." (Depo of Lo Presti 37: 21-23), further emphasized the grave safety concerns.

Mr. Lo Presti identified the restraint system's failure and its non-compliance with ASTM standards, stating, "The belt replacement effort was not managed within the Standard of Care of Engineering, which is the recognized specifying authority on changes related to systems not involving passengers' safety" (Depo of Lo Presti 170: 12-15). His findings point to the critical need for a more robust and compliant seatbelt design for the safety of amusement ride patrons.

Addressing Defendant's reliance on approval letters, Mr. Lo Presti noted the peculiarities in the certification process, indicating that the approval letters did not confirm actual testing or validation consistent with proper use. (Depo of Lo Presti 81-82:25-3). Safe-Strap's own admission confirmed that Safe-Strap "did not perform any tests upon the prototype seatbelts," (Pl.'s 1st Set Interrogs. No. 16), and gap in the documentation and direct oversight raises significant doubts about the thoroughness and reliability of any supposed safety evaluations of the seatbelts.

### iii. Reaffirming the Seatbelt Failure Due to Inadequate Tab Engagement and System Defectiveness.

The Defendant's interpretation of Mr. Lo Presti's deposition undermines the broader context of his expert analysis and the underlying principle of engineering and safety standards applied by Mr. Lo Presti.

While Mr. Lo Presti acknowledged the need to revise his opinion regarding the specific mechanism of the buckle failure, this does not equate to a concession or waiver of the opinion that the seatbelt system was defective and contributed to the incident. The focus of Mr. Lo Presti's analysis is not solely on the buckle tab engagement but on the overall inadequacy of the seatbelt system in ensuring the safety of the ride's occupant.

Mr. Lo Presti's expertise in amusement ride safety and engineering provides a solid foundation for his conclusions about the safety belt system. Further, Mr. Lo Presti has "considerable experience" with seatbelts and used many standards "very similar" to ASTM standards. (Depo of Lo Presti 109-110: 24-22). His assessment of the restraint system, as in his deposition, extends beyond the mere engagement of the buckle. Mr. Lo Presti noted, "The configuration of this ride and the physics clearly suggest a more advanced restraint system was necessary" (Depo of Lo Presti 36: 18-22) and that the Safe-Strap restrain system failed to comply with ASTM standard classes of restraints. (Depo of Lo Presti 37: 1-4).

The Plaintiff acknowledges that Mr. Lo Presti did not specifically delineate the mechanics of the buckle's failure. However, his broader evaluation of the seatbelt system, considering the design and operational context of the ride, indicates a systematic failure. "[T]he restraint system failed… what we do know is a person was ejected from the ride," further underscored the risks associated with the seatbelt system. (Depo of Lo Presti 34: 20-24). The seatbelt was, indeed, defective and posed an unreasonable danger to the ride's occupants.

13

It is important to clarify that Plaintiff does not require leave of the Court to have Mr. Lo Presti supplement his expert report. As per this Honorable Court's Scheduling Order, supplementation of expert disclosures is permissible under Federal Rules of Civil Procedure 26(e). (ECF No. 30). This issue, including the procedural and substantive justifications for such supplementation, is discussed in greater detail in Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike Expert Report and to Exclude Testimony.

### iv. Mr. Lo Presti's Application of ASTM Standards to Establish Defective and Unreasonably Dangerous Seatbelts.

Mr. Lo Presti's report and testimony clearly demonstrate the applicability of the ASTM standards to the Anakeesta Rail Runner Mountain Coaster. His detailed analysis shows a direct correlation between the standards and the safety requirements for the seatbelts. While Mr. Lo Presti acknowledged using the 2019 ASTM standards, he clarified that the most recent edition available for purchase and review was the one used in his analysis. He further explained that there is no material difference in standards after a long-standing review since the original approval in 2003. (Depo of Lo Presti 173: 14-21). This clarification reinforces the validity of Mr. Lo Presi's conclusions, emphasizing that the fundamental safety requirements in these standards are consistent and applicable to the type of ride and seatbelt systems in question.

While Mr. Lo Presti indicated his intention to supplement his report, it is critical to note that his initial analysis provided a substantial foundation for his conclusions regarding the defective nature of the seatbelts. His further insights, developed through continued analysis and reflection on the case, serve to enhance and clarify these initial findings. This process aligns with Mr. Lo Presti's own words from his deposition, where he stated, "I don't anticipate there will be material changes in my opinions. But I do suspect that some of my opinions will be strengthened or potentially deemed less important as information becomes available." (Depo of Lo Presti 77: 7-

14

18). This is a normal and acceptable practice in expert analysis, where additional perspectives and understandings evolve as more information becomes available.

Mr. Lo Presti's analysis, grounded in ASTM standards, effectively highlights the deficiencies in the seatbelt design and the failure to provide adequate safety measures. His expertise allowed him to interpret these standards in the context of the specific ride and seatbelt system, leading to a well-founded conclusion that the seatbelts were not only defective but also posed an unreasonable danger to the occupants. Mr. Lo Presti stated, "The configuration of this ride and the physics of the ride clearly suggest that a more advanced restraint system was necessary. And, in fact, the Safe-Strap restraint system didn't even comply with any of the five classes of restraints presented in the ASTM standard" (Depo 36: 18-22). Furthermore, he observed, "But[,] what we do know is a person was ejected from the ride," underscoring the critical safety issues (Depo 34: 20-24). His insights are based on substantial experience, and he expressed, "I have an opinion on whether it complies [with ATM standards]. And it clearly does not comply with some of those standards" (Depo 24: 18-18), emphasizing his comprehensive assessment of the seatbelt system's compliance with safety standards.

As referenced by the Defendant, Robert Bentz's affidavit fails to provide concrete evidence of the testing or validation of the seatbelt system. His statements merely confirm the installation of the seatbelts before a third-party inspection but fall short of indicating any testing of the seatbelts themselves. This is further corroborated by the third-party inspection reports, which notably do not detail any tests conducted on the seatbelt. The only mention of seatbelts in these reports is in the context of one car being designated as a "seatbelt test car only." (2018 Inspection Report).

An examination of the correspondence from Brandauer reveals significant gaps in the assertions made by Defendant.[2] The letter used to justify the safety of the seatbelts does not

_____

[2] As discussed previously, Plaintiff contends these letters are classical hearsay evidence.

15

explicitly state that they inspected the seatbelt system and does not identify the Safe-Strap seatbelt. This omission is critical as it raises questions about the thoroughness of the evaluation and approval process. As a result, Defendant's reliance on these documents to prove the safety and adequacy of the seatbelt system is substantially weakened.

In accordance with Federal Rule of Civile Procedure 26(e), Mr. Lo Presti intends to supplement his reports. This is not an induction of new opinions but corrections, clarifications, and expansions of previously stated views based on the same foundational data and expertise. The rule allows for such supplementation to correct inaccuracies or to complete an incomplete report, which is precisely the approach taken by Mr. Lo Presti. Furthermore, it is important to clarify that the Plaintiff does not require leave of the Court to have Mr. Lo Presti supplement his expert report. This Honorable Court's Scheduling Order allows for supplementation of expert disclosures when required under Federal Rule of Civil Procedure 26(e). (ECF No. 30). This issue, including the procedural and substantive justifications for such supplementation, is discussed in greater detail in Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike Expert Report and to Exclude Testimony, where we elaborate on the legal and practical grounds of amending the expert report.

The supplementation of Mr. Lo Presti's report aligns with Federal Rule of Civil Procedure 26(e), which mandates supplementation to correct inaccuracies and complete an incomplete report. The 1993 advisory committee notes to Rule 26 clarify that changes in expert opinions, whether in the report or subsequent deposition, trigger a duty of supplemental disclosure under subdivision (e)(1). Federal Rule of Civil Procedure 26(a)(2)(C) and Rule 26(a)(3) support the submission of a supplementary report when no specific deadline is set by the court. *Porter v. Hamilton Beach/Proctor-Silex, Inc.*, 2003 U.S. Dist. LEXIS 14089, No. 01-2970MaV, 2003 WL 21946595

(W.D. Tenn., July 28, 2003); *Jack Tyler Eng'g Co. v. ITT FLYGT* Corp., No. 03-2060MaV, 2004 U.S. Dist. LEXIS 26155 (W.D. Tenn. June 8, 2004).

This situation is analogous to the decision in *Mayse v. Ethicon, Inc*., where the court allowed the re-deposition of an expert following the submission of a supplemental report. 2022 U.S. Dist. LEXIS 28847, at *10. In our case, the defense counsel, Mr. Mayer, agreed with Plaintiff's counsel, Sidney Gilreath, to conduct a further deposition of Mr. Lo Presti following the submission of his supplemental report. (Depo. of Lo Presti 13: 1-5). This agreement reflects the procedural correctness and mutual acknowledgment of the necessity and propriety of the supplemental report in ensuring a fair and comprehensive evaluation of the expert testimony.

### v. Defense of Mr. Lo Presti's Expertise and Analysis Regarding Inertial Release

The Defendant's argument seeking to exclude Mr. Lo Presti's testimony regarding inertial release and its effects on the seatbelt system is unfounded and misinterprets the nature of expert testimony in this context. Mr. Lo Presti, as an experienced forensic engineer, applied his extensive knowledge and expertise to hypothesize a plausible failure mechanism of the seatbelt system based on the dynamics and forces involved in the ride.

Mr. Lo Presti's opinion on the possibility of inertial release is grounded in his comprehensive understanding of mechanical systems and their behavior under dynamic loads. His analysis of the seatbelt system, in the context of the forces experienced during the ride, is a legitimate engineering assessment and falls well within the scope of his expertise. He stated, "But there is a potential for disengagement due to inertial effects. (Depo of Lo Presti 182: 22-25).

The role of expert testimony is not to assert absolute certainties but to provide informed professional opinions that can aid in understanding complex technical matters. Mr. Lo Presti's analysis on inertial release is part of his comprehensive process. He further elaborated that he derived at inertial release, "[A]ctually, as I was evaluating some of these modes. And then, actually,

when I was reviewing [the] standards." Mr. Lo Presti's analysis on inertial release is part of his comprehensive process.

Mr. Lo Presti's opinions meet the requirements of Federal Rule of Evidence 702, as they are based on sufficient facts and data, are the product of reliable principles and methods, and apply these principles and methods reliably to the facts of the case. Mr. Lo Presti's hypothesis about inertial release is based on a rational analysis of the seatbelt system's behavior under potential ride conditions.

While Mr. Lo Presti did not definitively state in his report that inertial release occurred, the possibility raises significant concerns about the seatbelt's safety and design and creates an issue of material fact. The fact that such a failure mode is plausible under the ride's operational conditions points to potential deficiencies in the design and robustness of the seatbelt system. Inertial release is directly relevant to the case's central question of whether the seatbelt was defective or unreasonably dangerous.

Mr. Lo Presti's testimony about inertial release is a part of a broader analysis of the seatbelt system. His comments about the potential for inertial release should not be viewed in isolation but as a component of his overall assessment of the seatbelt system's safety.

**B. Plaintiff Demonstrates the Unreasonable Danger of the Seatbelt**

Plaintiff strongly contends that the seatbelt provided by Safe-Strap was, indeed, unreasonably dangerous at the time of its release into the markets, as defined by Tenn. Code Ann. § 29-28-102(8). The evidence presented in this case, particularly the expert testimony of Mr. Lo Presti, aligns with the statutory definition of "unreasonably dangerous," considering both the consumer expectations and the prudent manufacturer tests outlined in *Ray ex rel. Holman v. BIC Corp.*, 925 S.W.2d 527, 531 (Tenn. 1996).

The Plaintiff maintains that the consumer expectation test is appropriate for determining the seatbelt's unreasonable danger. However, the Plaintiff also demonstrates that the seatbelt was unreasonably dangerous under the prudent manufacturer test, meeting both standards.

The Tennessee Supreme Court, in answering a certified question, has already held that the consumer expectation test should be applied in cases involving seatbelts. *Jackson v. GMC*, 60 S.W.3d 800 (Tenn. 2001). The Defendant's argument for the prudent manufacturer test, based on its application in a case involving steel rod passenger restraints for an amusement park ride, is not a compelling reason to deviate from the established precedent of applying the consumer-expectation test in seatbelt cases. Further supporting this notion is the Defendant's own argument that the roller coaster is patron-controlled. Thus, it differs substantially from a tower ride with a steel rod restraint system.

### i. Applying the Consumer Expectation Test to Safe-Strap's Seatbelt System

In addressing the applicability of the consumer expectations test to the case at hand, it is essential to consider *Jackson v. GMC*, 60 S.W.3d 800 (Tenn. 2001). This precedent is crucial for understanding the standard against which the safety of the seatbelt system provided by Safe-Strap should be judged. *Jackson v. GMC* established that the consumer expectations test is applicable even to products that involve complex technology or perform familiar functions through new processes. *Id*. at 806.

As Mr. Lo Presti's detailed analysis and site visit show, the seatbelt system exhibited defects and non-compliance with recognized safety standards. Mr. Lo Presti's evaluation of the seatbelt system's component parts, where he concluded that the restraint system did not adequately protect the safety of the occupants, aligns with the consumer expectation test. (Depo of Lo Presti 31:20-22, 33:7-10). His observations that the configuration of the ride and physics of the ride clearly

suggest that a more advanced restraint system was necessary," Depo of Lo Presti 36:18-22), is particularly relevant in applying the consumer expectations test.

Ms. Tagert's expectation that the seatbelt would remain fastened during the rise is a baseline consumer expectation. Ms. Tagert testified at her deposition that she expected "that [the seatbelt] would keep me in the cart." (Depo. of Rhiannon Tagert 78:7). The failure of the seatbelt to perform this basic function, therefore, falls squarely within the realm of being unreasonably dangerous under the consumer expectations test. The seatbelt's failure to meet the basic safety expectations test supports this assertion.

Given the long history and consumer familiarity with the safety measures that seatbelts are expected to provide, applying the consumer expectations test is appropriate in this case. The failure of the seatbelt system to meet these basic safety expectations clearly demonstrates that the seatbelt system was unreasonably dangerous.

### ii. Alternatively, Applying the Prudent Manufacturer Test to Safe-Strap's Seatbelt System

While Defendant suggests that the prudent manufacturer test is more suitable given the complexity of the seatbelt system, this assertion oversimplifies the nature of seatbelts. Seatbelts, by their long-standing use, are not inherently complex devices beyond the understanding of an ordinary consumer. Therefore, the Plaintiff maintains that the consumer expectations test is appropriate. However, even under the prudent manufacturer test, Plaintiff's arguments and evidence demonstrate significant concerns regarding the safety of Safe-Strap's seatbelt system.

Mr. Lo Presti's extensive experience and expertise in forensic engineering provide a solid foundation for his analysis of the seatbelt system. His testimony and report indicate a thorough understanding of complex mechanical systems, particularly in the context of amusement rides. Mr. Lo Presti's deposition reveals his knowledge of formal literature on product testing, placement into service, and nondestructive testing methods for quality assurance on complex mechanical systems.

This background is crucial in evaluating the prudence of Safe-Strap's decision to market the seatbelt system. As Mr. Lo Presti stated, "I'm familiar with doing inspection on that type of work and the systems [of amusement park rides]." (Depo of Lo Presti 40-41: 24-9)

The Defendant asserts that compliance with ASTM standards and state guidelines establishes a rebuttable presumption that the product is not unreasonably dangerous. However, Plaintiff challenges this presumption by presenting evidence of the seatbelt's failure and non-compliance with critical safety standards. The fact that an incident occurred just days after the coaster's operations began raises significant questions about the robustness and reliability of the safety mechanisms in place, including the seatbelt system. During his deposition, Mr. Lo Presti's emphatic statement highlights the gravity of the situation: "What we do know is a person was ejected from the ride." (Depo of Lo Presti 34:24).

The evaluation of a product's safety under the prudent manufacturer test involves balancing various factors, including the product's utility, safety aspects, availability of safer alternatives, the manufacturer's ability to eliminate safe characteristics, and the feasibility of loss spreading. *Alexander v. Antonio Zamperla, S.p.A.*, No. E2009-01049-COA-R3-CV, 2010 Tenn. App. LEXIS 549, at *21 n.3 (Ct. App. Aug. 27, 2010). In this context, Plaintiff contends that Safe-Strap, as an assembler and distributor, failed to ensure the utmost safety in its design and testing of the seatbelt systems. The seatbelt's system failure under operation conditions, as evidenced by Ms. Target's ejection from the ride, clearly indicates a significant safety oversight.

The Defendant's claim that the seatbelt system was not unreasonably dangerous is effectively challenged by the Plaintiff's evidence, particularly the expert testimony. Mr. Lo Presti's detailed analysis, including his conclusion that "The [seat]belt replacement effort was not managed within the Standard Care of Engineering," underscores the significant safety concerns and need for a more robust seatbelt system. (Depo of Lo Presti 170:12-15).

**CONCLUSION**

Plaintiff respectfully requests that this Honorable Court deny Defendant Safe-Strap Company, LLC's motion for summary judgment. The significant and disputed material facts, particularly regarding the safety and efficacy of the seatbelt system, are matters suited for a jury's determination. Given the compelling evidence present, including the comprehensive expert analysis by Mr. Lo Presti, it is clear that key questions regarding the seatbelt's failure, its compliance with safety standards, and the potential hazards it posed to consumers like Ms. Tagert remain unsolved.

These questions are not merely technical; they go to the very heart of public safety and consumer trust in such critical safety devices. Allowing these crucial issues to be resolved by a jury ensures that the principles of justice and fairness are upheld. Therefore, Plaintiff asserts her right to a trial by jury to resolve these significant matters, where the credibility of the evidence and expert testimony can be thoroughly evaluated.

Respectfully submitted,

s/Sidney W. Gilreath                                                              Sidney
W. Gilreath, Esq. (BPR# 2000)
Gilreath & Associates, PLLC
550 Main Avenue, Suite 600
Knoxville, TN 37902
(865) 637-2442
(865) 971-4116 (fax)
gilknox@sidgilreath.com
**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of December 2023 an exact copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by United States Mail. Parties may access this filing through the Court's electronic filing system.

Minton Mayer, Esq.
Colleen M. Schuetz Freeman, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
5050 Poplar Avenue, Suite 1430
Memphis, TN 38157
*Attorneys for Safe-Strap Company, LLC*

s/Sidney W. Gilreath
Gilreath & Associates